**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LEE BATCHELDER, derivatively on behalf of IMPERIAL SUGAR COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN SHEPTOR, JOHN K. SWEENEY, JAMES J. GAFFNEY, RONALD C. KESSELMAN, GAYLORD O. COAN, DAVID C. MORAN, JOHN E. STOKELY, LOUIS DREYFUS COMMODITIES LLC, LD COMMODITIES SUGAR HOLDINGS LLC, LOUIS DREYFUS COMMODITIES SUBSIDIARY INC.,<br><br>    Defendants,<br><br>and<br><br>IMPERIAL SUGAR COMPANY,<br><br>    Nominal Defendant. | § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. _____<br><br>**DEMAND FOR JURY TRIAL** |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTY AND VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1.    Plaintiff brings this derivative and direct action on behalf of the Imperial Sugar Company ("Imperial Sugar" or the "Company") against Imperial Sugar's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of their

attempt to sell the Company to Louis Dreyfus Commodities LLC ("LDC") by means of an unfair price and through a materially misleading recommendation statement. Additionally, Plaintiff, individually, brings a claim against Defendants for their violations of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Imperial Sugar is one of the largest processors and marketers of refined sugar in the North American Free Trade Agreement region. Imperial Sugar refines, packages and distributes cane sugar into various products, including granulated, powdered, liquid and brown sugars, co-crystallized sweeteners and syrups, at a refinery and packaging facility in Georgia and a packaging facility located in Louisiana.

3.      On May 1, 2012, LDC and the Company announced a definitive agreement under which LDC, through its wholly-owned subsidiary LD Commodities Sugar Holdings LLC ("Parent") and its wholly-owned subsidiary Louis Dreyfus Commodities Subsidiary Inc. ("Merger Sub"), will commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Imperial Sugar for $6.35 per share in cash (the "Proposed Transaction"). The Tender Offer commenced on May 11, 2012 and is scheduled to expire on June 11, 2012. The Proposed Transaction is valued at approximately $203 million, including the assumption of debt and pension liabilities.

4.      As described in more detail below, the consideration shareholders are to receive is inadequate and undervalues the Company.  Despite having a higher offer on the table from Bidder F of between $6.70 to $7.00 per share, the Board inexplicably terminated discussions with Bidder F and accepted LDC's lower offer.  The Board also failed to attempt to create any sort of competitive bidding process between Bidder F and LDC and, instead, entered into the Merger Agreement for the wholly inadequate price of $6.35 per share.  Indeed, according to

Yahoo Finance, as of May 1, 2012, at least one Wall Street analyst had a price target of $20.00 per share when the Proposed Transaction was announced.  Moreover, the Company reported a book value of $12.47 per share for the most recent quarter.

5.      Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company. Specifically, pursuant to the merger agreement dated May 1, 2012 (the "Merger Agreement"), defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers or even in continuing discussions and negotiations with potential acquirers; (ii) a provision that provides LDC with five business days to match any competing proposal in the event one is made; and (iii) a provision that requires the Company to pay LDC a termination fee of $3.5 million, and reimburse LDC's expenses up to $1.5 million, in order to enter into a transaction with a superior bidder. These provisions substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Imperial Sugar.

6.      In connection with the Proposed Transaction and the Tender Offer, on May 11, 2012, the Company filed a Schedule 14D-9 Recommendation Statement (the "Recommendation Statement") with the United States Securities and Exchange Commission ("SEC"). The Recommendation Statement fails to provide the Company's shareholders with material information and provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision regarding whether to tender their shares in support of the Proposed Transaction.  Defendants have violated Sections 14(d)(4) and 14(e) of the Exchange Act by omitting material facts necessary to render the Recommendation Statement

non-misleading. Defendants have also breached their fiduciary duty of candor by failing to disclose material information to the Imperial Sugar shareholders necessary for them to determine whether to tender their shares in support of the Tender Offer.

7.      The Individual Defendants have breached their fiduciary duties of loyalty, due care, independence, good faith and fair dealing, and Imperial Sugar, LDC, Parent and Merger Sub have aided and abetted such breaches by Imperial Sugar's officers and directors.  Plaintiff seeks to enjoin the Proposed Transaction unless and/or until defendants cure their breaches of fiduciary duty.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

9.      This Court also has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331, 1367.

10.      Venue is proper in this Court because the conduct at issue took place and had an effect in this county. Venue is proper in this Court pursuant to 28 U.S.C.A. §1391(a) because: (i) Imperial Sugar maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting in violation of the fiduciary duties owed to Imperial Sugar occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

11.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Imperial Sugar. Plaintiff is a citizen of the state of Nevada.

12.     Nominal defendant Imperial Sugar is a corporation organized and existing under the laws of the State of Texas. It maintains its principal executive offices at 8016 Highway 90-A, P.O. Box 9, Sugar Land, Texas 77487-0009.  Imperial Sugar may be served with process by serving its registered agent for service of process, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

13.     Defendant John Sheptor has been the President, Chief Executive Officer and a director of the Company since 2008.  Sheptor is a citizen of the state of Texas.  Sheptor may be served with process at 8016 Highway 90-A, P.O. Box 9, Sugar Land, Texas 77487-0009, or wherever else he may be found.

14.     Defendant John K. Sweeney has been a director of the Company since 2001. Sweeney is a citizen of the state of New York.  Sweeney may be served with process at 8016 Highway 90-A, P.O. Box 9, Sugar Land, Texas 77487-0009, or wherever else he may be found.

15.     Defendant James J. Gaffney has been a director of the Company since 2001. Gaffney is a citizen of the state of New York.  Gaffney may be served with process at 8016 Highway 90-A, P.O. Box 9, Sugar Land, Texas 77487-0009, or wherever else he may be found.

16.     Defendant Ronald C. Kesselman has been a director of the Company since 2008. Kesselman is a citizen of the state of Ohio.  Kesselman may be served with process at 8016 Highway 90-A, P.O. Box 9, Sugar Land, Texas 77487-0009, or wherever else he may be found.

17.     Defendant Gaylord O. Coan has been a director of the Company since 2001. Coan is a citizen of the state of Georgia.  Coan may be served with process at 8016 Highway 90-A, P.O. Box 9, Sugar Land, Texas 77487-0009, or wherever else he may be found.

18.     Defendant David C. Moran has been a director of the Company since 2005. Moran is a citizen of the state of Pennsylvania.  Moran may be served with process at 8016 Highway 90-A, P.O. Box 9, Sugar Land, Texas 77487-0009, or wherever else he may be found.

19.     Defendant John E. Stokely has been a director of the Company since 2008. Stokely is a citizen of the state of Virginia.  Stokely may be served with process at 8016 Highway 90-A, P.O. Box 9, Sugar Land, Texas 77487-0009, or wherever else he may be found.

20.     Defendants referenced in ¶¶ 13 through 19 are collectively referred to as Individual Defendants and/or the Board.

21.     Defendant Louis Dreyfus Commodities LLC is a Delaware limited liability corporation with its headquarters located at Westblaak 92, 3012 KM Rotterdam, Netherlands. LDC is a world leader in the processing of agricultural products and the merchandising of a diverse range of commodities.

22.     Defendant LD Commodities Sugar Holdings LLC is a Delaware limited liability corporation wholly-owned by LDC.

23.     Defendant Louis Dreyfus Commodities Subsidiary Inc. is a Texas corporation wholly owned by Parent that was created for the purposes of effectuating the Proposed Transaction.

## OBLIGATIONS OF INDIVIDUAL DEFENDANTS

24.     Each of the Individual Defendants owed to Imperial Sugar the duty of loyalty, good faith, due care and diligence in the management and administration of the affairs of the

Company and in the use and preservation of its property and assets, along with the duty of full and candid disclosure of all material facts thereto. Furthermore, the Individual Defendants owed a duty to Imperial Sugar to ensure that Imperial Sugar operated in compliance with all applicable federal and state laws, rules and regulations, and that Imperial Sugar did not engage in any unsafe, unsound or illegal business practices.

25.     To discharge these duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls and financial and corporate affairs of Imperial Sugar. By virtue of their obligations to carry out their duties with the utmost loyalty, good faith, due care and diligence, the Individual Defendants were required, among other things, to:

(a)     manage, conduct, supervise and direct the employees, businesses and affairs of the Company in accordance with all applicable laws, rules and regulations, and the Company's charter and by-laws;

(b)     neither violate nor knowingly, recklessly or negligently permit any officer, director or employee of the Company to violate applicable laws, rules and regulations and to exercise reasonable control and supervision over such officers and employees;

(c)     ensure the prudence and soundness of policies and practices undertaken or proposed to be undertaken by the Company;

(d)     remain informed as to how the Company, in fact, was operating, and upon receiving notice or information of unsafe, imprudent or unsound practices, to make reasonable investigation in connection therewith and to take steps to correct that condition or practice;

(e)     supervise the preparation, filing and/or dissemination of any SEC filing, press releases, audits, reports or other information disseminated by the Company, and to examine and evaluate any reports of examinations or investigations concerning the practices, products or conduct of officers of the Company, and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above; and

(f)     preserve and enhance the Company's reputation as befits a public corporation and to maintain public trust and confidence in the Company as a prudently managed institution fully capable of meeting its duties and obligations.

## FURTHER SUBSTANTIVE ALLEGATIONS

26.     Imperial Sugar is one of the largest processors and marketers of refined sugar in the North American Free Trade Agreement region. Imperial Sugar refines, packages and distributes cane sugar into various products, including granulated, powdered, liquid and brown sugars, co-crystallized sweeteners and syrups, at a refinery and packaging facility in Georgia and a packaging facility located in Louisiana.

27.     In a press release dated May 1, 2012, the Company announced that it had entered into a merger agreement with LDC pursuant to which LDC, through Parent and Merger Sub, will commence a tender offer to acquire all of the outstanding shares of the Company for $6.35 per share in cash.

28.     Despite having a higher offer on the table from Bidder F of between $6.70 to $7.00 per share, the Board inexplicably terminated discussions with Bidder F and accepted LDC's lower offer.  The Board also did not attempt to create any sort of competitive bidding

process between Bidder F and LDC and, instead, entered into the Merger Agreement for wholly inadequate consideration.

29.     LDC is seeking to acquire the Company at the most opportune time, at a time when the Company's stock price is trading at depressed prices and a huge discount to its true intrinsic value.

30.     Indeed, in January 2011, Imperial Sugar stock traded between $11.98 and $13.28 per share, a value more in line with the Company's true intrinsic value. Imperial Sugar's stock price for the last two years is represented by the following chart:



31.     The Company reported a book value of $12.47 per share for the most recent quarter.

32.     In addition, according to Yahoo Finance, as of May 1, 2012, at least one Wall Street analyst had a price target of $20.00 per share when the Proposed Transaction was announced.

33.     The Proposed Transaction consideration also fails to adequately compensate Imperial Sugar's shareholders for the significant synergies created by the merger. The Proposed Transaction is a strategic merger for LDC. In the press release announcing the Proposed Transaction, the Chief Executive Officer of LDC, Mikael Morn, stated: "Imperial Sugar is a well-established operator in the sugar industry in North America, and we see an excellent strategic fit with Louis Dreyfus Commodities LLC. This transaction is an important step forward in our plan to grow and diversify our global sugar activities from sugar cane crushing and international sugar trading into sugar refining and distribution in major consumer markets." Despite the significant synergies inherent in the transaction for LDC, however, the Board failed to secure a fair price for the Company, either for the intrinsic value of its assets or the value of the Company's assets to LDC.

***Imperial Sugar's Officers and Directors Obtained Special Benefits for Themselves***

34.     The Company's executive officers and directors have material conflicts of interest and are acting to better their own personal interests through the Proposed Transaction at the expense of Imperial Sugar's public shareholders.

35.     Certain of the Company's officers and directors currently hold unvested stock options and/or restricted stock units of the Company. Pursuant to the terms of the Merger Agreement, stock options to acquire Imperial Sugar common stock will be cancelled and converted into the right to receive the excess of the merger consideration over the per share

exercise price of the option. Restricted shares will be cancelled and converted into the right to receive the per share merger consideration. According to the Recommendation Statement, the Imperial Sugar named executive officers hold restricted shares valued at $1 million and the directors hold restricted stock units valued at $1 million. The Recommendation Statement, however, fails to disclose the number of restricted stock units held by each director.

36.     In addition, all Imperial Sugar executive officers are subject to plans or contracts that contain a severance provision applicable to a change in control. The following chart shows the amount of compensation the executive officers will receive should they be terminated without cause:

| Name | Cash ($) | Equity ($) | Pension/ NQDC ($) | Perquisites/ Benefits ($) | Other ($) | Totals ($) |
|------|----------|------------|-------------------|---------------------------|-----------|------------|
| John C. Sheptor *Chief Executive Officer* | $1,801,800 | $482,060 | — | $53,526 | $600,600 | $2,937,986 |
| H.P. Mechler *Senior Vice President – Chief Financial Officer* | $505,440 | $129,883 | — | $33,510 | $168,480 | $837,313 |
| Louis T. Bolognini *Senior Vice President – Secretary and General Counsel* | $463,008 | $175,146 | — | $33,510 | $154,336 | $826,000 |
| Patrick D. Henneberry *Senior Vice President – Commodities Management* | $552,620 | $142,919 | — | $26,389 | $184,207 | $906,135 |
| Raylene M. Carter *Vice President - Manufacturing* | $238,000 | $83,350 | — | $14,685 | $71,400 | $407,435 |

However, the named executive officers will receive compensation at the time the Proposed Transaction is consummated regardless of whether they are terminated, as the Board amended the 2012 Management Incentive Plan to provide for the accelerated payment of bonuses at the consummation of the Proposed Transaction. Thus, Messrs. Sheptor, Mechler, Bolognini and Henneberry will receive $600,600, $168,480, $154,336 and $184,207 respectively, and Ms. Carter will receive $71,400, just upon the completion of the merger.

37.     Based on the above, the Proposed Transaction reflects an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of Imperial Sugar's public shareholders.

***The Preclusive Deal Protection Devices***

38.     As part of the Merger Agreement, the Individual Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

39.     Section 6.4(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by LDC. Section 6.4(c) demands that the Company terminate any and all prior or on-going discussions with other potential acquirers.

40.     Pursuant to § 6.4(b) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Company must notify LDC of the bidder's identity and the terms of the bidder's offer. Pursuant to § 1.2(c), should the Board determine that the unsolicited offer is superior, before the Company can terminate the Merger Agreement with LDC in order to enter into the competing proposal, it must grant LDC five business days in which the Company must negotiate in good faith with LDC (if LDC so desires) and allow LDC to amend the terms of the Merger Agreement to make a counter-offer so that "the Takeover Proposal would no longer constitute a Superior Proposal." In other words, the Merger Agreement gives LDC access to any rival bidder's information and allows LDC a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor LDC and piggy-back upon the due diligence of the foreclosed second bidder.

41.     The Merger Agreement also provides that a termination fee of $3.5 million must be paid to LDC by Imperial Sugar, including reimbursement of up to $1.5 million in expenses, if the Company decides to pursue the competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

42.     LDC is the beneficiary of a "Top-Up" provision that ensures that LDC gains the shares necessary to effectuate a short-form merger. Pursuant to the Merger Agreement, if LDC receives 90% of the shares outstanding through its tender offer, it can effect a short-form merger. In the event LDC fails to acquire the 90% required, the Merger Agreement also contains a "Top-Up" provision that grants LDC an option to purchase additional shares from the Company in order to reach one share more than the 90% threshold required to effectuate a short-form merger.

43.     In connection with the Proposed Transaction, certain members of Imperial Sugar's directors and executive officers, who collectively own approximately 3% of Imperial Sugar's common stock, have entered into agreements to tender their shares in favor of the Proposed Transaction with LDC and to vote against an alternative takeover proposal. Accordingly, 3% of Imperial Sugar's common stock is already "locked up" in favor of the Proposed Transaction.

44.     Moreover, the Company disclosed that it had entered into a Poison Pill Amendment granting a limited exemption only to LDC to exceed the poison pill's ownership limitations. As stated in a Form 8-K filed with the SEC on May 1, 2012:

> In connection with the Company's entry into the Merger Agreement, the Company and the Rights Agent entered into the Rights Agreement Amendment, dated as of May 1, 2012. The terms of the Rights Agreement Amendment provide that, among other things, neither of the Tender Offer, the execution of the Merger Agreement or any Tender and Voting Agreement nor the consummation of the Merger or the other transactions contemplated by the Merger Agreement or

any Tender and Voting Agreement will result in any triggering of rights of holders or of obligations of the Company under the Rights Agreement or any adverse event under the Rights Agreement. In particular, no Person will be deemed to be an Acquiring Person (as defined in the Rights Agreement) by virtue of the Merger Agreement, the execution and delivery of the Merger Agreement, or any amendment thereto, the execution and delivery of any Tender and Voting Agreement, the transactions contemplated by the Merger Agreement, the transaction contemplated by the any Tender and Voting Agreement or the public announcement of any of the foregoing. In addition, the Rights Agreement Amendment amends the definition of "Expiration Date" such that such definition shall include the effective time of the Merger.

This action effectively precludes any other person from launching a competing bid for Imperial Sugar in a situation where the directors have decided to sell the Company and its shareholders no longer need the protection of a poison pill. Thus, the Poison Pill Amendment being limited to LDC lacks a proper corporate purpose and is an unnecessary and unreasonable deal protection device that serves only to insulate the Proposed Transaction from the possibility of a potentially superior alternative bid.

45.     Ultimately, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

***The Materially Misleading and Incomplete Recommendation Statement***

46.     On May 11, 2012, the Company filed the Recommendation Statement with the SEC in connection with the Proposed Transaction. The Recommendation Statement fails to provide the Company's shareholders with material information and instead provides them with materially misleading information, thereby rendering the shareholders unable to make an

informed decision regarding whether to tender their shares in support of the Proposed Transaction. The Recommendation Statement, which recommends that Imperial Sugar shareholders tender their shares in the Proposed Transaction, contains numerous material omissions and misstatements, in contravention of the Board's duty of candor and full disclosure and in violation of Sections 14(d)(4) and 14(e) of the Exchange Act.

47.     The Recommendation Statement fails to disclose the amount of compensation that Perella Weinberg would have received for its work as financial advisor to Imperial Sugar had the Company chosen a restructuring alternative instead of the Proposed Transaction.

48.     The Recommendation Statement also fails to disclose the compensation that Perella Weinberg has received for its work as financial advisor to Imperial Sugar for "certain strategic matters."

### Disclosures Concerning the Named Executive Officers' and Directors Compensation

49.     The Recommendation Statement fails to disclose material information pertaining to the compensation the named executive officers will receive upon consummation of the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose the number of shares of common stock owned by each director and executive officer of Imperial Sugar; the number of restricted stock units owned by each director and executive officer of Imperial Sugar; and the date that the Board amended the fiscal 2012 Management Incentive Plan to accelerate the payment of annual bonuses to the executive officers and the reasons for doing so.

### Disclosures Concerning the Events Leading Up to the Announcement of the Proposed Transaction

50.     The Recommendation Statement fails to disclose the person or persons who constitute "Imperial Sugar," particularly when "Imperial Sugar" directed Perella Weinberg to Provide LDC with information in May 2011; "Imperial Sugar" signed a non-disclosure

agreement with LDC at a time when the sales process had been suspended by the Board; "Imperial Sugar" authorized Perella Weinberg to reinitiate contact with previous participants after the sales process was resumed; "Imperial Sugar" directed Perella Weinberg to advise LDC to provide a letter of interest on February 26, 2012; and "Imperial Sugar" held discussions with PE Firm A and PE Firm B in February 2012. In addition, the Recommendation Statement fails to disclose the employee of Imperial Sugar who spoke to LDC on May 2011 and referred LDC to Perella Weinberg.

51.     The Recommendation Statement fails to disclose whether and to what extent discussions took place between Bidder E and Perella Weinberg after submitting a proposal between January 30, 2012 and February 1, 2012, the result of any such discussions and the reasons for deciding not to pursue Bidder E's proposal.

52.     The Recommendation Statement fails to disclose the analysis performed by Perella Weinberg "of a range of strategic alternatives . . .including a sale of Imperial Sugar, obtaining a minority investment while remaining a public company, engaging in a strategic acquisition, pursuing deferral if Imperial Sugar's pension obligations, as well as various alternatives that would be available in a Chapter 11 restructuring process" as presented to the Board at the February 1, 2012 meeting, as well as the Board's reasons for deciding against choosing one of these alternatives to pursue.

53.     The Recommendation Statement fails to disclose the reasons the Board "instructed management and the advisors to focus their efforts in the sales process on those parties most likely to reach a viable acquisition proposal," and the criteria for selecting a viable acquisition proposal.

54.     The Recommendation Statement fails to disclose material information pertaining to the events leading up to the announcement of the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

(a)     The reasons the Board chose Perella Weinberg over other firms considered for the role of financial advisor to analyze strategic alternatives;

(b)     Who chose the 22 parties contacted by Perella Weinberg in January and February 2011 and the criteria for choosing such parties;

(c)     What range of potential transactions were Perella Weinberg authorized to explore at the December 2010 Board meeting and the reasons bidders were invited to propose only the three specific options of acquiring the Company, acquiring Wholesome Sweeteners and purchasing core refinery operations;

(d)     The terms of the indications of interest received in March and April 2011 from the four parties interested in acquiring the entire company, the one party interested in acquiring Wholesome Sweeteners and the one party interested in acquiring core refinery operations, and the reasons the Board only invited the parties that had made proposals to acquire the Company to continue in the process;

(e)     The reasons a number of parties indicated that they were not interested in moving forward in the process between April and June 2011;

(f)     The reasons the two bidding groups decided not to move forward in the process in the beginning of June 2011;

(g)     The reasons the Board decided to suspend the sales process in July 2011 and whether other options were considered to continue with the strategic alternative process;

(h)     The number of strategic parties and private equity parties engaged in discussions or due diligence with Perella Weinberg between August 2011 and December 2011, when it was decided to lead discussions with private equity parties, who determined to include private equity parties in discussions and the reasons for doing so;

(i)     Who purchased the Imperial Sugar investment in Louisiana Sugar Refining LLC in December 2011, the nature and details of the discussions between that party and the Company, whether and how the sale impacted the sales process, whether that party had been considered at the beginning of the strategic alternatives process and if not, why that party hadn't been considered whether the party indicated an interest in acquiring the whole company or if the Company asked whether the party would be interested in acquiring the whole company;

(j)     Whether the Perella Weinberg employees working on the strategic alternatives process were the same as those working on the restructuring alternatives, and if not, whether they collaborated or worked together at all while  both processes were occurring;

(k)     Out of the twelve parties that held discussions or engaged in due diligence between August and December 2011, how many decided not to move forward in the process and their reasons for doing so;

(l)     The criteria by which Perella Weinberg determined who was "actively engaged in the sales process" when providing bid process letters on January 13, 2012;

(m)     The reasons Bidder D indicated, between January 30 and February 1, 2012, that they were not interested in continuing in the process;

(n)     The reasons PE Firm B was not interested in continuing in the process;

(o)     The party to which the Company had sold its interest in Wholesome Sweeteners, the nature and details of the discussions between that party and the Company,

whether and how the sale impacted the sales process, whether that party had been considered at the beginning of the strategic alternatives process and if not, why that party hadn't been considered whether the party indicated an interest in acquiring the whole company or if the Company asked whether the party would be interested in acquiring the whole company;

(p)     The reasons that the Company determined that it would reconnect with PE Firm A after the sale of Wholesome Sweeteners, whether the Company did reconnect with PE Firm A and if so, the result of such discussions;

(q)     The reasons that Bidder G's joint venture partner was not interested in moving forward in the process on March 21, 2012;

(r)     Whether LDC provided a reason its offer dropped from $6.55-$7.65 per share on February 13, 2012 to $6.00 per share on April 5, 2012 and if so, to disclose such reasons;

(s)     The reasons the Board determined that Bidder G's joint venture proposal was "more appropriate as an alternative to a restructuring than as an alternative to an acquisition of Imperial Sugar," how the Company responded to Bidder G's proposal, including whether Bidder G was informed that the Company was more interested in a sale, and whether Bidder G's proposal was rejected; and

(t)     Whether the proposals received from Bidder E, Bidder G and PE Firm A would have avoided the need to restructure under Chapter 11 and the reasons the Company failed to pursue those options.

### Disclosures Concerning the Company's Financial Forecasts

55.     The Recommendation Statement fails to disclose material information concerning the financial forecasts of Imperial Sugar. In particular, the Recommendation Statement should disclose the "estimated stand alone unlevered free cash flows" for 2012 through 2016 as

calculated by Perella Weinberg in the *Discounted Cash Flow Analysis*, along with disclosure of the 2012-2016 forecasts all of the line items used to calculate the free cash flows.

**Disclosures Related to Perella Weinberg's Financial Analyses and Opinion Regarding the Value of the Company**

56.     The Recommendation Statement also fails to disclose certain data and inputs underlying the financial analyses supporting the fairness opinion of the Board's financial advisor, Perella Weinberg, including:

(a)     with respect to the *Publicly Traded Companies Analysis,* the criteria used to determine which companies were deemed relevant and thus selected for use in the analysis, the multiples observed for each company in the analysis and the reasons Perella Weinberg selected the representative ranges of 6.5x – 7.5x and 6.0x – 7.0x for the FY 2012E EBITDA and FY 2013E EBITDA, respectively;

(b)     with respect to the *Selected Transactions Analysis,* the criteria used to select the transactions used in the analysis, the multiples observed for each transaction in the analysis, and the reasons Perella Weinberg selected the representative range of 7.0x – 8.0x for the FY 2012E EBITDA;

(c)     with respect to the *Discounted Cash Flow Analysis,* the criteria used to select the perpetual growth rates of 0.5% to 2.5%; the Company's weighted average cost of capital estimate calculated by Perella Weinberg that was used in selecting the discount rate range of 11.5% to 13.5%; and the key inputs used to calculate the Company's weighted average cost of capital; and

(d)     with respect to the *Illustrative Premiums Paid Analysis*, the names of the companies involved in the selected transactions as well as the dates of such transactions, and the

reasons Perella Weinberg selected the representative range of 25% to 40% for the share price of Imperial Sugar's share price on April 30, 2012.

57.    Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention to his derivative claims.

58.    Plaintiff also seeks injunctive relief as to his direct federal claims, and requests that the Court enjoin the Tender Offer from closing until all material information has been disclosed to Imperial Sugar's shareholders.

**Demand Pursuant To Federal Rule 23.1 and Texas Business Organization Code Section 21.553**

1.    Plaintiff has been a shareholder of Imperial Sugar at the time of the acts complained of herein, and remains a shareholder of Imperial Sugar.

2.    This action is not a collusive one to confer jurisdiction that this Court would otherwise lack.

3.    As detailed below, Plaintiff, along with other Imperial Sugar shareholders, has made a demand on the Board of Directors to no avail.

4.    Pursuant to Texas Business Organization Code §21.553, in a letter dated May 29, 2012, in regard to Plaintiff's state law breach of fiduciary duty claims, Plaintiff made a demand upon the current Imperial Sugar's Board of Directors, informing the Board of the identity of the alleged wrongdoers; describing the factual basis for the allegations of wrongdoing; describing how such wrongdoing is harmful to the Company; and requesting that the Board take remedial action, including without limitation, to ensure that the Proposed Transaction's consideration is fair to Kinetic and its shareholders. Another similar letter was sent to Imperial Sugar's Board of

Directors on behalf of another shareholder on May 8, 2012, before the initiation of the Tender Offer.

5.  Plaintiff here thus notified the Board of Directors—who are the alleged wrongdoers here by breaching, and continuing to breach, their fiduciary duties under Texas state law—of their wrongdoing, described it in detail, and requested that the Board take remedial measures as to that wrongdoing.

6.  Pursuant to Texas Business Organization Code §21.553, "(a) A shareholder may not institute a derivative proceeding until the 91st day after the date a written demand is filed with the corporation stating with particularity the act, omission, or other matter that is the subject of the claim or challenge and requesting that the corporation take suitable action. (b) The waiting period required by Subsection (a) before a derivative proceeding may be instituted is not required if: (1) the shareholder has been previously notified that the demand has been rejected by the corporation; (2) the corporation is suffering irreparable injury; or (3) irreparable injury to the corporation would result by waiting for the expiration of the 90-day period."

7.  Plaintiff has made his demand to the Company.  In addition, according to the Amendment No. 1 to the Recommendation Statement filed with the SEC May 16, 2012, at least three other Imperial shareholders made similar demands on the Board asserting claims substantially similar to those alleged here -- two demands were made on May 3, 2012 and the third on May 8, 2012, and the Company not only did not respond, but filed the Recommendation Statement and commenced the Tender Offer after receiving that letter.

8.  Despite these prior demands, the Board has not only failed to remedy the breaches of fiduciary duty, and instead, is moving forward expeditiously with the Tender Offer, now set to expire in approximately two weeks.  Thus, Plaintiff has in effect, by the actions of the Company

to proceed with the Tender Offer on an expedited basis, been notified that his demand has been rejected by the Company.

9.     Furthermore, as alleged herein, the Company is suffering irreparable injury, as it is in the process of being sold and terminated pursuant to an unlawful process and unlawful conduct by Defendants.

10.     Furthermore, as stated herein and the Recommendation Statement, the transaction is set to close within less than a month. Thus, if Plaintiff were to wait 90 days to file his derivative claims, he would suffer irreparable injury, as Plaintiff and the corporation will be unable, and will not have the time, to seek equitable and injunctive relief as to his derivative claims prior to the closing of the Tender Offer.   Once the transaction closes, the harm will be irreparable, as undoing a complex corporate transaction is impossible and damages are difficult to ascertain.

11.     Plaintiff thus has sufficient basis to file his derivative claims within 90 days, as the Company has effectively rejected his demand, is suffering irreparable injury, and waiting 90 days will result if Plaintiff waits 90 days to file his derivative claims.

12.     Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention to his derivative claims.

13.     Plaintiff also seeks injunctive relief as to his direct federal claims, and requests that the Court enjoin the Tender Offer from closing until all material information has been disclosed.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14(d)(4) and 14(e) of the Exchange Act
### (Brought Individually Against Individual Defendants)

14.     Plaintiff repeats all previous allegations as if set forth in full herein.

15.     Plaintiff brings this claim individually and not on behalf of a class.

16.     Defendants have issued the Recommendation Statement with the intention of soliciting shareholder support of the Proposed Transaction.

17.     Sections 14(d)(4) and 14(e) of the Exchange Act require full and complete disclosure in connection with tender offers.  Specifically, Section 14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative

18.     The Recommendation Statement violates the Sections 14(d)(4) and 14(e) because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

19.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II
## Derivative Breach of Fiduciary Duties
## (Against All Individual Defendants)

20.     Plaintiff repeats all previous allegations as if set forth in full herein.

21.     Plaintiff has no adequate remedy at law.

22.     As fiduciaries of Imperial Sugar, the Individual Defendants are obligated to conduct the business of the Company with loyalty, candor and independence, and in good faith. This cause of action is asserted based upon the Individual Defendants' acts in violation of state law, which acts constitute a breach of fiduciary duty and waste of the Company's corporate assets.

23.     The Individual Defendants have violated the fiduciary duties of care, loyalty, good faith and independence owed to Imperial Sugar, have engaged in unlawful self-dealing, and have acted to put their personal interests and/or the interests of LDC ahead of the interests of Imperial Sugar.

24.     The Individual Defendants have violated their fiduciary duties by agreeing to the Proposed Transaction without regard to the fairness of the Proposed Transaction to Imperial Sugar. By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as part of a common plan, knowingly or recklessly failed to exercise the care required, and breached their duties of loyalty, good faith and independence owed to Imperial Sugar.

25.     By reason of the foregoing acts, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Imperial Sugar.

26.     In addition, Defendants, in their roles as executives and/or directors of the Company, participated in the acts alleged herein and/or acted in gross disregard of the facts and/or failed to exercise due care to prevent the unlawful conduct.

27.     Each of the Defendants, individually and collectively, has breached and/or aided and abetted breaches of fiduciary duties owed to Imperial Sugar.

28.     As a direct and proximate result of the Defendants' conduct, Imperial Sugar will suffer irreparable harm if the Proposed Transaction proceeds.

## COUNT III
### Breach of Fiduciary Duty -- Disclosure
### (Against Individual Defendants)

29.     Plaintiff repeats all previous allegations as if set forth in full herein.

30.     The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff all information material to the decisions confronting Imperial Sugar's shareholders.

31.     As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

32.     As a result, Plaintiff and the Class members are being harmed irreparably.

33.     Plaintiff and the Class have no adequate remedy at law.

## COUNT IV
### Aiding and Abetting
### (Against Imperial Sugar, LDC, Parent and Merger Sub)

34.     Plaintiff repeats all previous allegations as if set forth in full herein.

35.     As alleged in more detail above, Nominal Defendant Imperial Sugar and Defendants LDC, Parent, and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

36.     As a result, Imperial Sugar is being harmed.

37.     Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

(B)     declaring that the Recommendation Statement is materially misleading and contains omissions of material fact in violation of Sections 14(d)(4) and 14(e) of the Exchange Act;

(C)     enjoining, preliminarily and permanently, the Proposed Transaction;

(D)     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(E)     directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(F)     awarding to Imperial Sugar restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants while they were in breach of their fiduciary duties;

(G)     awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

(H)     granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Daniel W. Jackson*

Daniel W. Jackson, SBN 00796817
S.D. of Texas ID No. 20462
3900 Essex Lane, Suite 1116
Houston, Texas  77027
(713) 522-4435
(713) 527-8850 – fax
daniel@emmonsjackson.com

Attorney-in-Charge for Plaintiff

**OF COUNSEL:**

Emmons & Jackson, P.C.
Scott K. Vastine, SBN 24056469
S.D. of Texas No. 743194
3900 Essex Lane, Suite 1116
Houston, Texas 77027
(713) 522-4435
(713) 527-8850 – fax
scott@emmonsjackson.com


LEVI & KORSINSKY, LLP
Shannon L. Hopkins, Esq.
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

Attorneys for Plaintiff

## **VERIFICATION**

I, Lee Batchelder, under penalties of perjury, hereby do declare that I am a plaintiff in the foregoing complaint, that I have read the complaint, and that the facts therein are true to my own knowledge, except to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct to the best of my knowledge, information, and belief.

Dated: May 2 2, 2012

Lee Batchelder